**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HANIF BEY,** | : | **CIVIL ACTION NO. 3:23-cv-0688** |
| **Plaintiff,** | : | |
| **v.** | : | **(JUDGE MANNION)** |
| **POCONO MEDICAL CENTER** **d/b/a LEHIGH VALLEY HEALTH** **NETWORK,** | : : | |
| **Defendant.** | : | |

**<u>MEMORANDUM</u>**

Presently before the court is the motion to dismiss of Defendant Pocono Medical Center d/b/a Lehigh Valley Health Network ("LVHN"). (Doc. 6.) Plaintiff Hanif Bey, a former LVHN employee terminated for refusing to obtain a Covid-19 vaccine, seeks damages for religious discrimination, retaliation, and wrongful termination under Title VII and the Pennsylvania Human Relations Act ("PHRA"). LVHN argues that Bey's complaint, (Doc. 1), fails to state a claim upon which relief may be granted. For the reasons stated below LVHN's motion is **DENIED** in part and **GRANTED** in part.

**I.    Background**

The background of this case is taken from the factual allegations set forth in Bey's complaint, (Doc. 1), which the court must accept as true for the purposes of LVHN's motion to dismiss.

For over 27 years, Bey has been a Moorish American Moslem and member of the Moorish Science Temple of America ("M.S.T.A."). The M.S.T.A. was founded in Newark, New Jersey in 1913 and incorporated as religious organization in Chicago, Illinois in 1928. The M.S.T.A. derives its power and authority from the Koran of Mohammed and seeks to extend the learning and truth of the Prophet Ali. Adherents of the M.S.T.A are instructed to cover their heads with a fez, turban, and/or kufi. For 17 of the last 27 years, Bey has worked at LVHN, and at all times wore religious headgear including a white kufi.

Bey's comprehensive religious beliefs as a Moorish American Moslem are that vaccines, including the Covid-19 vaccine, are an unnatural substance that interfere with and threaten his ability to be "saved, redeemed, and become one with Allah." Holy Koran Circle Seven-Chapter 1-The Creation and Fall of Man. Accordingly Bey has requested a religious exemption from all vaccines since becoming a Moorish American Moslem. From the start of his career at LVHN in 2004, Bey has been granted such exemptions. LVHN has also exempted Bey from its required tuberculous test, an injectable, and provided him the accommodation of chest X-ray instead.

In or about 2015, Bey received a call from LVHN's Chaplain, Reverend Sherry Sneed, to discuss one of his requests for a religious exemption. During this call Bey described to Reverend Sneed why his religious beliefs conflicted with LVHN's vaccine requirement. LVHN subsequently approved Bey's request. Likewise, Bey requested, and LVHN approved, religious exemptions to LVHN's influenza vaccine requirement in 2018, 2019, and 2020. In each of these years Bey complied with the required accommodation of mask wearing during flu season.

On August 24, 2021, Bey submitted a Covid-19 Immunization Exemption Request to LVHN. On the form Bey explicitly wrote "my sincerely held religious beliefs prevents [*sic*] me from obtaining the covid-19 vaccination." In response to the question "Have you or your family members been vaccinated in the past?" Bey answered no. In response to the question "Do you object to the vaccine because of what you believe it contains?" Bey answered no. Finally in response to the question "When did your religious beliefs in opposition to vaccination develop? If you belong to an organized religion, please provide the date you became a documented member." Bey responded, "For over 27 years, I have remained consistent and steadfast in my religious beliefs."

On August 30, 2021, LVHN through its Deputy General Counsel, Glenn Guanowsky, Esq., denied Bey's religious exemption request without explanation. That same day Bey requested Attorney Guanowsky provide in writing how he reached his decision. Attorney Guanowsky simply responded "I have reviewed the information that was provided and applied the law to those facts, concluding that it did not meet the definition of a sincerely held bona fide religious belief." He did not say which law he applied the facts to or LVHN's definition for a sincerely held bona fide religious belief.

On August 31, 2021, Bey emailed LVHN's Vice President of Labor Relations, Lynn Lansdowne, asking for clarification on LVHN's Covid-19 vaccination policy but received no reply. On September 7, 2021, Bey again wrote to Ms. Lansdowne, but this time requested an appeal under LVHN's Fair Treatment process. In this request Bey explicitly complained that the denial of his initial exemption request without explanation constituted religious discrimination. Attorney Guanowsky simply responded: "The decision remains final. There is no appeal."

On September 10, 2021, Bey nevertheless submitted an appeal under LVHN Fair Treatment Policy, where he again explicitly complained that the denial of initial exemption request without explanation constituted religious discrimination. Ms. Landsdowne responded "As previously communicated,

COVID-19 vaccination exemption decisions are not eligible to appeal through the Fair Treatment Policy. Therefore, the exemption decision you received is considered final."

On September 22, 2021, Bey sent an email to the President of Lehigh Valley Hospital – Pocono, Elizabeth Wise, where he explained the circumstances of his religious exemption denial and once again complained that the denial constituted religious discrimination. Specifically, Bey wrote: "As a faithful Moslem for over 27-years, I did not expect to provide chapter, line, and verse from my holy book to substantiate my religious objection to the COVID-19 vaccine, nor did I did not [*sic*] expect that my sincerely held bona fide religious beliefs would be subject to scrutiny given the constitutional rights afforded to me and all under the First Amendment."

On September 27, 2021, Bey's counsel sent a similar email to LVHN's counsel highlighting the fact that Bey is a faithful Moslem of 27 years and received exemptions and accommodations from LVHN throughout his 17-year career there. The email from Bey's counsel further asserted that given the religious exemptions granted to two of Bey's presumably Christian coworkers, LVHN's denial of Bey's request subjected him to religious discrimination and disparate treatment under Title VII. Both of Bey's co-workers were granted the accommodation of regular testing, masking, and

social distancing in lieu of receiving a Covid-19 vaccine. LVHN also granted a vaccine exemption, to Nicole Blackwell, a nurse at Lehigh Valley Hospital – Allentown, on the basis that her Christian beliefs as a "life long anti-abortion advocate" prevented her from taking "medical therapy derived from aborted fetal cells."

Nevertheless, on October 1, 2021, Bey received a final warning to comply with LVHN's Covid-19 vaccine policy or face termination. Bey expressed a willingness to comply with the required accommodations of other unvaccinated LVHN employees including testing, masking, and social distancing. But Bey still did not obtain a Covid-19 vaccine. As a result, LVHN sent Bey a termination notice on November 12, 2021, ending Bey's 17-year career at LVHN despite otherwise positive performance evaluations and his designation as a "Healthcare Hero."

Thereafter, Bey timely exhausted his administrative remedies by filing a charge on December 8, 2021, with the United States Equal Employment Opportunity Commission ("EEOC"). On September 18, 2022, Bey's charge was transferred to the Pennsylvania Human Relations Commission ("PHRC.") On December 13, 2022, the PHRC mailed Bey a notice advising him of his right to bring this action under Section 12(c) of the PHRA. On January 27, 2023, the EEOC mailed Bey a right-to-sue letter. Bey then

brought the instant suit within 90 days of the receipt of the right-to-sue letter and within the requirements of the PHRA.

## II.     Legal Standard

LVHN's motion to dismiss is brought pursuant to Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id*. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus*., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, "[i]nasmuch as Pennsylvania law governs this action[,] we treat Pennsylvania Supreme Court opinions as binding precedent and Pennsylvania Superior Court opinions as persuasive precedent." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 107 n.2 (3d Cir. 2009).

### III.    Discussion

### A. Title VII – Religious Discrimination

Before bringing a claim of employment discrimination under Title VII, an employee must first file a claim with the EEOC and receive a right-to-sue letter. *See Federoff v. Geisinger Clinic*, 571 F. Supp. 3d 376, 385 (M.D. Pa. 2021). In this case, Bey has made the appropriate filing with the EEOC and received a right-to-sue letter, therefore, he is permitted to bring the instant private right of action under Title VII.

Title VII of the 1964 Civil Rights Act prohibits employers from discharging an employee based on his or her religion. *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009) citing 42 U.S.C. §2000e–2(a)(1). "Religion" is defined as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. citing 42 U.S.C. §2000e(j).

To establish a *prima facie* case of religious discrimination under Title VII, an employee must show: (1) they "held a sincere religious belief that conflicted with a job requirement," (2) they informed their employer of the conflict, and (3) they were "disciplined for failing to comply with the conflicting

requirement." *Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 490 (3d Cir. 2017). Once all factors are established the burden shifts to the employer to show either it made a good-faith effort to reasonably accommodate the religious belief, or such an accommodation would work an undue hardship upon the employer and its business. *Shelton v. University of Medicine & Dentistry of New Jersey,* 223 F.3d 220, 224. (3d. Cir. 2000),

Here, LVHN explicitly contests the second element of Bey's *prima facie* discrimination claim, *i.e.*, that Bey informed LVHN of a conflict between his sincerely held religious beliefs and its Covid-19 vaccine requirement. LVHN claims that Bey failed to inform it of a particularized religious belief in conflict with an employment requirement when he submitted his religious exemption requests. However, the uncontested exemption request form attached to and quoted in the complaint does not ask for such particularized information. The first prompt to which LVHN contests Bey's response reads:

I am requesting an exemption on the basis of a sincerely held bona fide religious belief, observance or practice that prevents me from obtaining the covid-19 immunization, described as follows: (attach any documentation which would be helpful in describing the reasons for your requested exemption and how it applies to matters of religious belief.)

This prompt does not ask for information with any specific degree of particularity. It is true that Bey, in responding to this prompt does not detail the minutia of his beliefs, which is not something the prompt asks him to do, but he did explicitly write "my sincerely held **religious beliefs** prevents [*sic*] me from obtaining the COVID-19 vaccine." (emphasis added.)

Furthermore, LVHN claims Bey did not even inform it of what organized religion he belongs to. But again, that information was not requested on the uncontested form attached to and quoted in the complaint. In relevant part the form asks: "When did your religious beliefs in opposition to vaccination develop? If you belong to an organized religion, please provide the date you became a documented member." Bey responded to this question "For over 27 years, I have remained consistent and steadfast in my religious beliefs." This response answers the question as asked. In fact, the question indicates that membership in an organized religion, like the M.S.T.A., is not necessary to claim a religious exemption.

If LVHN, needed more particular information about Bey's religious beliefs and how they conflicted with his vaccine argument, including specific religious affiliation, it could have asked for it. *See Taylor v. Phoenixville Sch. Dist.*, 184 F. 3d 296, 312 (3d Cir. 1999) quoting *Bultemeyer v. Fort Wayne Cmty. Sch.*, (In the ADA context an employee's request for a reasonable

accommodation requires a great deal of communication between the employee and employer with both parties bearing responsibility for determine what accommodation is necessary). Moreover, once his religious exemption request was denied, Bey repeatedly asked for clarification about LVHN's vaccine policy, and made repeated attempts to offer LVHN additional information about his religious beliefs. Yet, LVHN refused to explain the deficiencies in Bey's initial request or consider any additional information. *See Id.* (A party's obstruction or failure to engage in an interactive process to determine an accommodation can be considered evidence of bad faith.)

Bey, through his own email to LVHN Pocono President, Elizabeth Wise, and his attorney's email to LVHN counsel, still provided additional information to LVHN, including the fact that he is a faithful Moorish American Moslem. So, it is false for LVHN to claim Bey never informed it of his religious affiliation. Still LVHN claims it should not be held responsible for information provided to it after Bey's request was denied but provides no authority to support that proposition. LVHN had additional information regarding the conflict between Bey's beliefs in its possession before it terminated him and still terminated him. LVHN will be held responsible for that information and the fact that it never asked Bey for the additional information it now claims

was determinative. *See Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 450 (7th Cir. 2013) (requiring that an employee need only provide notice of a religious conflict, stating that "an employee who wants to invoke an employer's duty to accommodate his religion under Title VII must give the employer fair notice of his need for an accommodation and the religious nature of the conflict" but "[a]t the same time, an "employer cannot shield itself from liability ... by intentionally remaining in the dark.") (citing *Xodus v. Wackenhut Corp.*, 619 F.3d 683, 686 (7th Cir. 2010) (internal quotations omitted.)

LVHN further claims that the fact it granted Bey religious exemptions including from its influenza vaccine requirement for the proceeding 17 years has no bearing on the instant dispute. The court agrees that the fact Bey had been previously granted religious exemptions does not automatically establish the sincerity of his purported beliefs against taking the Covid-19 vaccine, but it did give LVHN fair warning that there was conflict between Bey's religious beliefs and its vaccine requirements. *See Wilkerson v. News Media Tech. Charter Sch. Inc.*, 522 F.3d 315 (3d Cir. 2008) citing *Reed v. Great Lakes Cos*., 330 F. 3d 931, 935 (7th Cir. 2003) (The employee must give the employer 'fair warning' that a particular employment practice will interfere with that employee's religious beliefs.") Bey has been telling LVHN

- 13 -

for 17 years that his beliefs conflict with a particular employment practice *i.e.*, vaccine requirements. Moreover, Bey pleads, and LVHN does not dispute, that he described his religious objection to vaccines in a conversation with Reverend Sneed, LVHN's chaplain. Accordingly, LVHN, at this stage, cannot claim it was excused from accommodating Bey's religious beliefs because it was not informed about those beliefs.

LVHN also claims that Bey cannot establish his beliefs are religious in nature and therefore not protected under Title VII. Beliefs are protected under Title VII when they are "(1) sincerely held, and (2) religious in nature, in the claimant's scheme of things." *Africa v. Commw. of Pa*., 662 F.2d 1025, 1030 (3d Cir. 1981) (citing *United States v. Seeger*, 380 U.S. 163, 185 (1965)). With respect to part two (2) of this inquiry, the court remains conscious that determining whether Bey's beliefs are religious "presents a most delicate question." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981). However, "the very concept of ordered liberty" precludes the court from allowing any person "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Id*. (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215-16, (1972)).

In determining whether an employee's beliefs are religious, the Third Circuit considers three factors, or "useful indicia" first articulated in *Africa v.*

*Pennsylvania*: whether the beliefs (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) are "comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Brown v. Children's Hosp. of Phila.*, 794 Fed. Appx. 226, 227 (3d Cir. 2020) (quoting *Fallon v. Mercy Catholic Med. Ctr. Of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017)). With respect to the first factor, beliefs address "fundamental" and "ultimate" questions when they "consider and attempt to come to terms with what could best be described as 'ultimate' questions-questions having to do with, among other things, life, and death, right and wrong, good, and evil." *Africa*, 662 F.2d at 1033.

With respect to the second factor, beliefs must be "comprehensive" to be religious – "a religion must consist of something more than a number of isolated, unconnected ideas" indeed, a "religion is not generally confined to one question or one moral teaching; it has a broader scope. It lays claim to an ultimate and comprehensive 'truth.'" *Id.* at 1035 (quoting *Malnak v. Yogi*, 592 F.2d 197, 209 (3d Cir. 1979)). As for the third factor, "in ascertaining whether a set of ideas should be classified as a religion" courts look to "any formal, external, or surface signs that may be analogized to accepted religions" such as "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation of

holidays and other similar manifestations associated with the traditional religions." *Id.* at 209.

While it is true that Bey did not include the "useful indicia" needed to establish his beliefs as religious in his initial request for a religious exception, nor was he asked to, he does plead such "useful indicia" in his complaint. As pled Bey's belief about vaccines is sincerely held and religious in nature. Specifically, Bey believes that any injection including the Covid-19 vaccine will interfere with and threaten his ability to be "saved, redeemed, and become one with Allah." This belief addresses a fundamental question, *i.e.,* the afterlife, is part of Bey's comprehensive religious beliefs, as a Moorish American Moslem, which is an organized religion recognizable by external signs including the wearing of conspicuous religious headgear as Bey did for his entire 17-year career at LVHN.

The question of whether Bey practices his belief regarding vaccination through "formal and external signs," such as holidays or ceremonies, further depends again on the question of whether that belief is inseparable from and interdependent with his beliefs as a Moorish American Moslem. *See Leeck v. Lehigh Valley Health Network*, No. 5:22-CV-4634, 2023 WL 4147223, at *7 (E.D. Pa. June 23, 2023). "If the moral teachings of plaintiff's faith form a kind of seamless garment or unity, and if his beliefs about the impermissibility

of receiving vaccines are a part of that unity, then the practice of his beliefs about vaccination would be bound up with the external signs of his faith." *Id*. Since Bey has asserted that his beliefs about vaccination are a part of his organized religious faith and has cited scripture and reasons beyond mere threadbare assertions, the court accepts as true, for the purpose of adjudicating a motion to dismiss, that his belief is inseparable from and interdependent with his religious beliefs as a Moorish American Moslem.

LVHN further cites two factually similar cases that it claims support dismissal of Bey's religious discrimination claim: *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458 (M.D. Pa. 2022) and *Blackwell v. Lehigh Valley Health Network*, No. 5:22-CV-03360-JMG, 2023 WL 362392 (E.D. Pa. Jan. 23, 2023). In *Finkbeiner*, a plaintiff, who had already been granted a religious exemption from her employer's Covid-19 vaccine mandate, alleged that her employer violated Title VII by terminating her for also refusing twice weekly Covid-19 tests, on the basis such tests violated her "God given right to make [her] own choices." 623 F. Supp. 3d at 463. There the court held that an employee cannot simply state that she has a "God given right to make [her] own choices" to avoid employers' requirements, because such a belief is "fungible enough to cover anything that [employee] trains it on" and is thereby "a blanket privilege." *Id*. at 465.

- 17 -

Likewise, in *Blackwell*, a plaintiff was initially granted a religious exemption from receiving a Covid-19 vaccine because such vaccines would "defile [her] relationship with God," based on her opposition to abortion, and on her belief that vaccines would cause "foreign [mRNA]" to "embed in our [G]od given DNA." 2023 WL 362392, at *7. However, the plaintiff still objected to biweekly testing because "observance of her religious beliefs forbids insertion of an unwanted foreign object into her body." *Id*. There the court held that the plaintiff's beliefs that "forbid[] insertion of an unwanted foreign object into her body" were, "absent further pleading regarding the religious nature of the belief, akin to asserting 'a blanket privilege.'" *Id.* at *8.

As result, the complaints in both *Finkbeiner* and *Blackwell* were dismissed. LVHN wants the court to reach a similar result here. However, it fails to cite a more analogous case that reached the opposite result. In *Leeck v. Lehigh Valley Health Network*, the plaintiff, unlike those in *Finkbeiner* and *Blackwell*, only sought an exemption from vaccination. The court there found that beyond assertions like those of the plaintiffs in *Finkbeiner* and *Blackwell* that amount to a blanket privilege, an employee must plead "sufficient information about the nature of their beliefs in order to state a claim for Title VII religious discrimination." *Leeck* 2023 WL 4147223, at *9 quoting *Blackwell* 2023 WL 362392, at *6. Essentially, to survive a motion to dismiss,

it is not enough for a plaintiff to allege that her religion forbids the Covid-19 vaccine "she must plead a little more." *Id.*

In *Leeck* the court ultimately found that the plaintiff plead enough additional facts about her religious beliefs to rise those beliefs above a blanket privilege. Specifically, she alleged that vaccines would make her "body impure in the eyes of the Lord" and her religious opposition to abortion made her also oppose the Covid-19 vaccine because she thought it was developed using aborted human fetal cells. Here, the court reaches a similar conclusion on Bey's claims.

Bey has plead enough specific facts about his religious beliefs to rise it above a blanket privilege. Citing the Koran, he has alleged that vaccines would threaten his ability to be "saved, redeemed, and become one with Allah." This reasoning only applies to vaccines and other injectables not all unwanted obligations. Furthermore, in stark contrast to the plaintiffs in *Finkbeiner* and *Blackwell*, who refused both to obtain Covid-19 vaccines and submit to the required accommodation of testing, Bey from the onset demonstrated his agreeableness to testing, masking, and social distancing requirements as an alternative to vaccination. Bey does not seek a blanket privilege from all employer requirements or even all Covid-19 safety protocols and gave LVHN as much notice as it requested of the conflict

between his religious beliefs and its vaccine requirement. The mere fact that unlike LVHN's Christian employees, Bey is a member of a less well-known religion does not make him any less entitled to the protections of Title VII. Since Bey has alleged sufficient facts to raise a reasonable expectation that discovery will uncover proof of his claim, LVHN's motion to dismiss this count will be denied.

### B. Title VII - Retaliation

Bey alleges that LVHN retaliated against him for requesting reasonable accommodations based on his religion, opposing discrimination, repeatedly complaining about the discrimination he suffered based on his religious beliefs, and repeatedly stating in writing that denial of his religious exemption request constituted religious discrimination under Title VII. However, LVHN claims that Bey fails to state a plausible retaliation claim. The court agrees.

To establish a *prima facia* case of retaliation under Title VII, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Krouse v. American Sterilizer Co.* 126 F. 3d 494, 500 (3d Cir. 1997). Here it is undisputed that Bey was terminated shortly after he engaged in protected activity *i.e.,* requested a

religious accommodation and complained of religious discrimination. Thus, the issue here is whether there was causal connection between Bey's protected activity and his termination.

"A casual connection may be shown by (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Gera v. County of Schuylkill*, 617 Fed. App'x 144, 147 (3d Cir. 2015). If a plaintiff relies on temporal proximity to establish a causal connection, "the timing of the allegedly retaliatory action must be unusually suggestive of retaliatory motive . . . ." *Krouse*, 126 F.3d at 503. This means a plaintiff relying on temporal proximity must also allege their employer had a retaliatory animus resulting from plaintiff's engagement in a protected action and that animus was a substantial factor in motivating the adverse employment decision. *See Id.* at 501 citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 931-35 (3d Cir. 1997).

If an employee establishes a *prima facia* case of retaliation, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. *Woodson* 109 F.3d at 920 n. 2. The employer's burden at this stage is "relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the

defendant need not prove that the articulated reason actually motivated the [action]." *Id*.

Here, Bey relies on temporal proximity but does not allege that animus was the substantial factor motivating LVHN's decision to terminate him. The substantial factor motivating Bey's termination was his failure to comply with LVHN's Covid-19 vaccination policy. Regardless of whether Bey sought a religious accommodation or complained of religious discrimination, LVHN would have terminated Bey for failing to obtain of Covid-19 vaccine. Likewise, even if Bey was able to establish a *prima facie* case of retaliation, which he has not, LVHN could satisfy its burden and advance Bey's failure to obtain a Covid-19 vaccine as a legitimate and non-retaliatory reason for terminating him. Therefore, Bey fails to state a plausible claim for retaliation and LVHN's motion to dismiss this count will be granted.

## C. PHRA

It is undisputed that Bey has complied with the administrative requirements of the PHRA and is permitted to bring the instant private right of action under it.

The Third Circuit applies the same standards to Title VII and PHRA claims for religious discrimination and retaliation. *See Wilkerson* 522 F. 3d at 318-319 (3d Cir. 2008). Thus, for the same reasons, LVHN's motion to

dismiss Bey's Title VII religious discrimination claim will be denied, LVHN's motion to dismiss Bey's PHRA religious discrimination claim will be denied. Conversely, for the same reasons, LVHN's motion to dismiss Bey's VII retaliation claim will be granted, LVHN's motion to dismiss Bey's PHRA retaliation claim will be granted. Still Bey brings an additional claim under the PHRA that he did not bring under Title VII: wrongful termination.

LVHN argues that it is unclear from the complaint whether Bey's wrongful termination claim is brought pursuant to the PHRA or common law. As a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974). Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy. *See e.g.*, *Reuther v. Fowler & Williams, Inc.,* 255 Pa. Super. 28, 386 A.2d 119 (1978) (employee cannot be discharged for serving on a jury). Bey does not argue that this case is one of those exceptions. Pennsylvania courts have further held that where a cause of action involves a violation of public policy for which a remedy already exists by statute, a common law cause of action will not be recognized. *See Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 437 (3d Cir.1986). Thus, insofar

as Bey's wrongful termination claim is based on the common law it will be dismissed.

However, Bey appears to bring his wrongful termination claim pursuant to the PHRA not the common law. In his response to LVHN's motion to dismiss, Bey merely requests the court allow him to proceed with his PHRA claim as stated in Count III (religious discrimination, retaliation, and wrongful termination.) Consequently, the court is led to conclude that Bey thinks he can bring an independent claim for wrongful termination under the PHRA. Bey is wrong. He can sue his employer for religious discrimination and retaliation under the PHRA, but he cannot also sue his employer for wrongful termination based on religious discrimination and retaliation. Like common law claims for wrongful termination, a wrongful termination claims under the PHRA based on the same facts as a religious discrimination or retaliation claim would be superfluous and not protect any additional interest. *See Petti v. Ocean Cnty. Bd. of Health*, 831 F. App'x 59, 64–65 (3d Cir. 2020) (A wrongful termination claim based on the same facts as a statutory discrimination claim does not protect any interest outside of statute's protections.)

Given the above and the fact Bey makes no substantive arguments as why their wrongful termination should not be dismissed, the court will grant LVHN's motion to dismiss Bey's wrongful termination claim.

## IV.    Conclusion

In light of the foregoing, the court will **DENY** LVHN's motion to dismiss Bey's Title VII and PHRA Religious Discrimination claims and **GRANT** LVHN's motion to dismiss Bey's Title VII and PHRA Retaliation claims as well as Bey's wrongful termination claim. An appropriate order follows.

_s/ Malachy E. Mannion_
**MALACHY E. MANNION**
**United States District Judge**

**DATE December 12, 2023**
23-688-01