## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

HANIF BEY,                                    :        CIVIL ACTION NO. 3:23-cv-688

　　　　　　Plaintiff,                          :

　　v.                                          :                (JUDGE MANNION)

POCONO MEDICAL CENTER                          :
d/b/a LEHIGH VALLEY HEALTH
NETWORK,                                        :

　　　　　　Defendant.                          :

### MEMORANDUM

Presently before the court are the parties' cross motions for summary judgment. (Docs. 26 and 28.) Plaintiff, a case manager, was employed by Defendant, a healthcare system, for over 17 years. On November 12, 2021, Plaintiff was terminated for failing to obtain a covid-19 vaccine after his request for a religious exemption to Defendant's vaccine requirement was denied. Plaintiff subsequently brought this suit alleging religious discrimination and retaliation under Title VII of the Civil Rights of 1964 and the Pennsylvania Human Relations Act (PHRA). The court granted Defendant's motion to dismiss as to Plaintiff's retaliation claims and now both parties seek summary judgment on Plaintiff's discrimination claims. For the reasons detailed below both motions will be **DENIED**.

## I.   Background:

Plaintiff is a Moorish American Moslem and member of the Moorish Science Temple of America ("M.S.T.A."). As such Plaintiff, wore a conspicuous religious headdress throughout his employment by Defendant. Because of his beliefs Plaintiff is also opposed to receiving vaccines. For each of his 17 years employed by Defendant he sought and obtained an exemption to Defendant's influenza vaccine requirement. Amid the covid-19 pandemic Defendant began requiring all its employees to additionally obtain a covid-19 vaccine. On August 24, 2021, Plaintiff submitted a religious exemption request form on which he wrote in part "my sincerely held religious beliefs prevents [sic] me from obtaining the covid-19 vaccination." He also wrote on the form that "For over 27 years, I have remained consistent and steadfast in my religious beliefs." However, nowhere on the form did Plaintiff indicate that he is a Moorish American Moslem or how vaccines conflict with his sincerely held religious beliefs.

On August 30, 2021, Defendant through its Deputy General Counsel, Glenn Guanowsky, denied Plaintiff's religious exemption request without explanation. The same day Plaintiff requested Guanowsky provide in writing how he reached his decisions. But he simply responded, "I have reviewed the information that was provided and applied the law to those facts,

- 2 -

concluding that it did not meet the definition of a sincerely held bona fide religious belief." Guanowsky did not say which law he applied to the facts or further define Defendant's criteria for a sincerely held bona fide religious belief in order to "protect the integrity of the process," as publicization of this information could help exemption requestors "game the system."

On August 31, 2021, Plaintiff emailed Defendant's Vice President of Labor Relations, Lynn Lansdowne, asking for clarification on Defendant's covid-19 vaccine policy but received no reply. On September 7, 2021, Plaintiff again wrote to Lansdowne, formally requesting an appeal and explicitly complaining that the denial of his religious exemption request constituted religious discrimination under Title VII. Guanowsky simply responded: "The decision remains final. There is no appeal."

On September 10, 2021, Plaintiff nevertheless submitted an appeal under Defendant's Fair Treatment Policy, where he again explicitly complained that the denial of his initial exemption request without explanation constituted religious discrimination. Lansdowne responded that Guanowsky's prior determination was final with no appeal. On September 22, 2021, Plaintiff sent an email to the hospital's President, Elizabeth Wise, where he for the first time explicitly identified his religion. Specifically, he wrote: "As a faithful Moslem for over 27-years, I did not expect to provide

chapter, line, and verse from my holy book to substantiate my religious objection to the COVID-19 vaccine, nor did I did not [sic] expect that my sincerely held bona fide religious beliefs would be subject to scrutiny given the constitutional rights afforded to me and all under the First Amendment."

On September 27, 2021, Plaintiff's counsel sent a similar email to Guanowsky highlighting the fact that Plaintiff has been a faithful Moslem for over 27 years and received exemptions and accommodations from Defendant throughout his 17 years employed by it. The email from Plaintiff's counsel further asserted that given the religious exemptions granted to two of Plaintiff's Christian coworkers, Defendant's denial of Plaintiff's request subjected him to discrimination and disparate treatment under Title VII. Both of Plaintiff's coworkers were granted the accommodation of regular testing, masking, and social distancing in lieu of receiving a covid-19 vaccine. Plaintiff expressed his willingness to also submit to regular testing, masking, and social distancing but on October 1, 2021, received a final warning to get vaccinated or face termination. Plaintiff did not get vaccinated and was terminated by Defendant on November 12, 2021.

Plaintiff timely exhausted his administrative remedies by filing a charge with the United States Equal Employment Opportunity Commission ("EEOC") on December 8, 2021. On September 18, 2022, Plaintiff's charge

- 4 -

was transferred to the Pennsylvania Human Relations Commission ("PHRC.") On December 13, 2022, and January 27, 2023, the PHRC and EEOC respectively sent Plaintiff right-to-sue letters. Plaintiff then brought the instant suit on April 25, 2023, within 90 days of receiving the EEOC's right to sue letter and the requirements of the PHRA.

On June 23, 2023, Defendant motioned to dismiss Plaintiff's complaint for failure to state a claim. Defendant argued *inter alia* that Plaintiff failed to inform it of a particularized religious belief in conflict with its vaccine requirement and therefore it could not be held liable for not accommodating his beliefs. On December 12, 2023, the court denied in part and granted in part this motion. Specifically, the court dismissed Plaintiff's retaliation claims but found Plaintiff was not required to describe his particularized religious beliefs on Defendant's religious exemption form, since Defendant did not ask for such information, Plaintiff had previously requested and received religious exemptions to Defendant's influenza vaccine requirement, Plaintiff previously had a detailed discussion with Defendant's chaplain about his religious objection to vaccines, and Plaintiff wore a conspicuous religious headdress throughout his employment by Defendant. Subsequently the parties engaged in discovery and filed the motions at issue here.

## II.    Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the nonmoving party and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *See also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (A court may not weigh the evidence or make credibility determinations.) The court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *See Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). Where the nonmoving party's evidence contradicts the

movant's, then the non-movant's must be taken as true. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citing *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1061 (3d Cir. 1991). But a non-movant "may not prevail merely by discrediting the credibility of the movant's evidence; it must produce some affirmative evidence." *Anderson,* 477 U.S. at 256–57.

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge this burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *See also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

The nonmoving party must direct the court's attention to specific, triable facts by "citing particular parts of materials in the record." Fed. R. Civ.

P. 56(c)(1)(A); *See United States v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs.") (Quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *See also DeShields v. Int'l Resort Properties Ltd.*, 463 F. App'x 117, 120 (3d Cir. 2012) ("If factual support for [a plaintiff's] claim exist[s] in the record, it [i]s incumbent upon her to direct the District Court's attention to those facts.")

If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23; *Jakimas v. Hoffman–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## III.   Discussion

Plaintiff argues that he is entitled to summary judgement because the record provides no basis for Defendant's failure to accommodate his beliefs and also indicates that he suffered disparate treatment because other similarly situated employees of different religions had their denials reversed or were able to further explain their beliefs in order claim religious exemptions. Conversely Defendant again argues that Plaintiff failed to inform

it of his particularized religious beliefs and therefore it cannot be held liable for failing to accommodate these beliefs. Likewise, Defendant argues that Plaintiff has not adequately identified any similarly situated comparators to support a disparate treatment theory. The court will address these arguments in turn.

### A. Failure to Accommodate

Title VII[1] failure to accommodate claims are governed by a burden-shifting framework. *E.E.O.C. v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010). Under this framework, Plaintiff has the initial burden of proving a *prima facie* case. *Id.* If he does so, the burden then shifts to Defendant to show either: (1) it made a good-faith effort to reasonably accommodate the plaintiff's religious beliefs, or (2) that such an accommodation would cause an undue hardship to the employer. *Id.* To establish a *prima facie* case of religious discrimination, Plaintiff must show: (1) he holds a sincere religious belief that conflicts with a job requirement; (2) he informed Defendant of the conflict; and (3) he was disciplined for failing to comply with the conflicting

---

[1] The Third Circuit construes Title VII and the PHRA consistently with each other. *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F. 3d 535, 539 n.5 (3d Cir. 2006.) Accordingly, the court's analysis of Plaintiff's Title VII claim also applies to Plaintiff's PHRA claim.

requirement. *GEO Grp.*, 616 F.3d at 271 (citing *Webb v. City of Phila.*, 562 F.3d 256, 259 (3d Cir. 2009)).

Plaintiff argues the record establishes the sincerity of the conflict between his religious beliefs and Defendant's vaccine requirement, he informed Defendant of that conflict, and was terminated for failing to comply with Defendant's vaccine requirement. Defendant only disputes that Plaintiff's exemption request form provided it adequate notice of the conflict between his beliefs and its vaccine requirement.

According to Defendant, to establish a failure to accommodate an employee must have "informed the employer of a particularized religious belief in conflict with an employment requirement." *Wilkerson v. News Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3d Cir. 2008). However, as the court noted when Defendant raised this same argument on motion to dismiss *Wilkerson* actually stands for the proposition that "[t]he employee must give the employer 'fair warning' that a particular employment practice will interfere with that employee's religious beliefs." *Id.* (citing *Reed v. Great Lakes Cos.*, 330 F. 3d 931, 935 (7th Cir. 2003)). In *Wilkerson* the Third Circuit simply noted that it had found a failure to accommodate in instances where an employee had "informed the employer of a particularized religious belief in conflict with an employment requirement." *Id. see, e.g., Abramson v. William*

*Paterson Coll. of N.J.,* 260 F.3d 265, 268 (3d Cir. 2001) (discussing Orthodox Jewish professor's warning to supervisor that she would not be able to teach on Jewish holidays).

On motion to dismiss the court found that Plaintiff plausibly pled he gave Defendant fair warning of the conflict between his religious beliefs and its vaccine requirement because although he did not initially disclose that he is a Moorish American Moslem or why his faith specifically prevented him from receiving a covid-19 vaccine on the exemption form he did identify his faith to Defendant's management prior to his termination and wore a conspicuous headdress throughout his employment by Defendant. Likewise, he had previously informed Defendant of his religious objection to vaccines through 17 years of religious exemption requests to Defendant's influenza vaccine requirement and an in-depth conversation about his religious objection to vaccines with Defendant's Chaplain Sherry Sneed in 2012. Moreover, Defendant did not explicitly ask for particularized information about Plaintiff's beliefs on the exemption request form and refused Plaintiff's attempts to provide more information about his beliefs once his request was denied.

The evidence subsequently produced during discovery again supports such a finding on summary judgment. It is undisputed that Plaintiff explicitly

- 11 -

wrote on his religious exemption request form that "my sincerely held **religious beliefs** prevents [sic] me from obtaining the covid-19 vaccination." (emphasis added.) It is also undisputed that the form did not ask Plaintiff to submit any additional information. In fact, Guanowsky, admits that he drafted the form to "cast a wide net" and allow people to submit information that "could" be useful to the applicable legal analysis namely the three-prong test used by the Third Circuit to ascertain the sincerity of religious beliefs. *See Africa v. Com. Of Pa.*, 662 F.2d 1025, 1031 (3d Cir. 1981). But Guanowsky did not describe or even cite to this test on the form to avoid "prodding" or "leading questions." Instead, Guanowsky "wanted to give everybody a blank canvas" that "encouraged" but did not require additional documentation and narratives to be attached.

Plaintiff cannot be faulted for not providing information Defendant never asked him to provide. Moreover, Plaintiff a social worker by trade, not a lawyer, could not been expected to know the applicable test Defendant was really basing its decision on. Still Plaintiff demonstrated his willingness to submit additional information when it became apparent that Defendant was hiding the ball and was nonetheless rebuffed. Also, despite Defendant's obfuscation Plaintiff still did identify his religion to Defendant, prior to his termination. Thus, Defendant cannot claim that Plaintiff's request appeared

- 12 -

purely secular or void of any indicia of a sincerely held religious belief in conflict with its vaccine requirement.

Nonetheless the fact that Plaintiff identified a conflict with his religious beliefs and later identified his particular religion does not conclusively establish that he informed Defendant of a conflict requiring accommodation. Likewise, Plaintiff's religious headdress did not provide such notice by itself. The record shows that Guanowsky did not personally know Plaintiff or even work in the same facility as him. As a result, no matter how conspicuous Plaintiff's religious headdress appeared during his employment by Defendant, it did not give Guanowsky fair warning he was a Moorish American Moslem at the time he denied Plaintiff's religious exemption request. Additionally, even if Guanowsky was aware of Plaintiff's headdress and the fact it signified Plaintiff is a Moorish American Moslem, he was not responsible for knowing what Plaintiff's beliefs as a Moslem entailed. *See Reed*, 330 F. 3d at 935 (Even if a person "wears a religious symbol, such as a cross or a yarmulka, this may not pinpoint his particular beliefs and observances" and "employers are not charged with detailed knowledge of the beliefs and observances associated with particular sects.")

Plaintiff's history of requesting and receiving religious exemptions from Defendant's influenza vaccine requirement also did not necessarily give

Defendant fair warning of the conflict between his religious beliefs and its covid-19 vaccine requirement. Plaintiff concedes that the influenza vaccine exemption process was simply the submission of a declination without providing Defendant any details about his religion, and without any determination as to the sincerity of Plaintiff's beliefs. However, Guanowsky admitted that he factored prior religious exemption requests into his consideration regarding Defendant's covid-19 vaccine requirement. So, the fact Plaintiff sought such exemptions to vaccine requirements for the past 17 years should have been another indicator that his beliefs were sincere.

Additionally, the fact that Defendant granted religious exemptions to prior vaccine requirements without particularized information about the requestors' beliefs makes its expectation that employees start submitting such additional information to obtain a covid-19 vaccine exemption appear all the more unreasonable. The record does not indicate that Defendant informed Plaintiff it was applying a more stringent standard to covid-19 vaccine exemption requests. In contrast the record indicates that Defendant intentionally did not inform its employees of the criteria it used to evaluate their requests. So, it was foreseeable that a repeat requestor such as Plaintiff could have easily misunderstood the detail he needed to provide when he initially filled out this particular request form.

Similarly, Plaintiff concedes that Reverend Sneed was the chaplain of Pocono Mountain Medical Center prior to its merger into Defendant's system in 2017 and that she no longer works for Defendant. However, these facts do not allow Defendant to claim it was never informed Plaintiff is a Moorish American Moslem or what his religious beliefs are that conflict with vaccine requirements. A change of personnel and facility ownership does not erase the past. In no other context would Defendant be allowed to baldly disavow liability from pre-merger activities as it attempts to do here. As such Plaintiff's conversation with Reverend Sneed cannot be completely discounted and serves as yet another indicator that a genuine dispute exists as to whether Plaintiff adequately notified Defendant of the conflict between his religious beliefs and its vaccine requirement.

Nonetheless Plaintiff still argues he is entitled to summary judgement because the religious accommodation process under Title VII requires "good faith," "bilateral cooperation," "reasonableness," and arguably an "interactive process." All things that Plaintiff claims Defendant failed to provide him. On motion to dismiss the court noted in the ADA context "a party's obstruction or failure to engage in an interactive process to determine an accommodation can be considered evidence of bad faith." However, after this court ruled on Defendant's motion to dismiss, the Eastern District of

- 15 -

Pennsylvania, in a case involving the same Defendant and the same religious exemption request form at issue here was asked to decide whether Defendant was required to engage in an interactive process to determine a religious accommodation under Title VII and interpreted Third Circuit precedent as imposing no such requirement. *See Ritter v. Lehigh Valley Health Network*, No. CV 22-4897, 2024 WL 643543, at *7 (E.D. Pa. Feb. 15, 2024) (quoting *Mullen v. AstraZeneca Pharms., LP*, No. CV 23-3903, 2023 WL 8651411, at *5 n.2 (E.D. Pa. Dec. 14, 2023) (citing *Miller v. Port Authority of New York & New Jersey*, 788 F. App'x 886, 890 n.19 (3d Cir. 2019)). ("While engagement in an 'interactive process' through which an employer and employee will work together to find an appropriate reasonable accommodation, is a duty imposed by the [ADA], a similar duty has not yet been imposed for Title VII religious accommodation claims.") This court agrees with the *Ritter* court on this specific issue and finds that Defendant was also not required to engage in an interactive process here.[2]

---

[2] Plaintiff additionally argues that other hospitals employed a "more robust exemption process" to covid-19 vaccine requirements. The court agrees with Defendant's response to this argument that what other hospitals did is irrelevant to the court's analysis of the present motions. However, the court notes that had Defendant engaged in a more interactive process like other hospitals did, instead of curtly denying religious exemption requests with no explanation and no opportunity to appeal, Plaintiff may not have lost his 17-year career and this lawsuit could have been completely avoided.

Still Plaintiff argues that irrespective of any interactive process requirement the relevant case law is clear that Title VII's requirement of reasonableness goes both ways, imposing a duty of "bilateral cooperation" on both the employer and employee. *Winans v. Cox Auto., Inc.*, No. CV 22-3826, 2023 WL 4353149, at *3 (E.D. Pa. July 5, 2023) (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69.) However, as Defendant points out these cases held the duty of bilateral cooperation arises only after an employee informs his employer that his religious beliefs conflict with a job requirement. Since a genuine dispute of fact exists as to whether Plaintiff adequately notified Defendant of the conflict between his religious beliefs and its vaccine requirement, the court cannot grant him summary judgment based on Defendant's failure to engage in bilateral cooperation. To put it another way since it is a question of fact whether Plaintiff made a reasonable request for a religious accommodation, it remains a question of fact whether Defendant was reasonable in denying that request.

Accordingly, a reasonable jury could find for either Plaintiff or Defendant on a failure to accommodate theory.

## B. Disparate Treatment

Title VII disparate treatment claims are analyzed under the familiar framework of the Supreme Court's decision in *McDonnell Douglas*

- 17 -

Corporation v. Green. See Oakley v. Orthopaedic Assocs. of Allentown, Ltd.,
742 F. Supp. 2d 601, 608 (E.D. Pa. 2010) (citing McDonnell Douglas Corp.
v. Green, 411 U.S. 792 (1973)).

Under this framework Plaintiff must first establish a prima facie case of
discrimination, meaning that (1.) he is a member of a protected class; (2.) he
was qualified to hold his position; (3.) he suffered an adverse employment
action; and (4.) a similarly situated person outside of the protected class was
treated more favorably, or the circumstances of the adverse action give rise
to the inference of discrimination. Id.; Sarullo v. U.S. Postal Serv., 352 F.3d
789, 797 (3d Cir. 2003). If a plaintiff can make out a prima facie case, the
burden shifts to the defendant to offer a legitimate, non-discriminatory reason
for the employment action. Abramson v. Wm. Paterson College of N.J., 260
F.3d 265, 281–82 (3d Cir. 2001). The burden then shifts back to the plaintiff
to offer evidence that the employer's proffered reason for the employment
action was pretextual, and that the real motivation was discrimination. Id.

According to Plaintiff the record establishes that he is a member of a
protected class (Moslem), he was qualified for the position he sought to
retain, he was terminated from that position, and similarly situated
employees outside of his protected class were treated more favorably giving

- 18 -

rise to an inference of discrimination. Defendant only disputes that similarly situated employees were treated more favorably that Plaintiff.

In support of his argument Plaintiff highlights evidence that Guanowsky reversed his initial denial of 386 religious exemptions for requestors who objected to the use of fetal stem cells in the development of the covid-19 vaccine. Even though the mostly Christian[3] religions of those requestors specifically allowed and encouraged adherents to take covid-19 vaccines because Defendant subsequently recognized that individuals can have legitimate religious beliefs that do not align with the official pronouncements of their religions. *See Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 715-716 (1981).

Conversely, after learning about Plaintiff's Moslem religion, Guanowsky admits that he refused to reverse his initial denial of Plaintiff's religious exemption request because his own research indicated that the Moslem religion encourages its faithful to take covid-19 vaccines. Defendant does not dispute that it reversed its denial of other employees' religious exemption requests. Instead, it argues that there is no evidence these other employees were similarly situated to Plaintiff.

---

[3] This group also included two Muslims, meaning followers of Islam, but no Moslems, meaning Moorish American Moslems or members of the M.S.T.A.

In determining whether a plaintiff and his comparators are similarly situated, courts consider whether there is a showing that the employees dealt with the same supervisors and decision-makers, were subject to the same standards, held the same job responsibilities, and "had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Dudhi v. Temple Health Oaks Lung Ctr.*, 2020 WL 996915, at *5 (E.D. Pa. Mar. 2, 2020) (quoting *Opsatnik v. Norfolk Southern Corp.*, 335 Fed. App'x. 220, 223); *Wilcher v. Postmaster Gen.*, 441 Fed. App'x 879, 882 (3d Cir. 2011).

However, in determining whether employees are "similarly situated," the Third Circuit has stated that "similarly situated" does not mean identically situated, and "[w]hich factors are relevant is determined by the context of each case…" *Opsatnik*, 335 Fed. App'x. at 222-223 (3d Cir. 2009). Additionally, whether comparators are similarly situated is a question of fact for the jury. *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014). Thus, summary judgment is only appropriate where there is no evidence from which a jury could find the parties were similarly situated. *Id.* (citing *Opsatnik,* 335 Fed. App'x. at 223–4).

Here Plaintiff argues that it is undisputed that all religious exemption requestors were subject to the same universal covid-19 vaccine policy, the

same exemption request form, the same process for seeking religious exemptions, and the same decisionmaker, Guanowsky.   All unvaccinated and non-exempt individuals were likewise terminated, without accommodation. Guanowsky by his own admission reviewed every religious exemption form and approved or denied each request himself to ensure "consistency." Still Defendant argues that Plaintiff is unable to identify the religions of the alleged comparators, what was contained within their requests for religious exemptions, or whether they submitted any additional information with their exemption requests.

While Defendant is correct that Plaintiff does not identify the specific denomination of each of the alleged comparators, the record does establish that they are mostly Christians and at a minimum not Moslem so outside of Plaintiff's protected class. Furthermore, the record also indicates Guanowsky asked certain select non-Moslem employees, including one employee who flatly refused to answer the questions on the religious exemption request form, to provide additional information to help him evaluate their requests for religious exemptions but refused Plaintiff's attempt to provide the same. As previously stated, Defendant was not required to engage in an interactive process regarding Plaintiff's request for accommodation. However, by engaging in such a process with other allegedly similarly situated non-

Moslem employees while refusing to do the same with Plaintiff, Defendant raises an inference of discrimination that could support liability under a disparate treatment theory.

Defendant claims also claims that these employees were not similarly situated to Plaintiff because they were medical staff at different facility. However, these employees were still subject to the same pertinent requirements, forms, and decisionmaker–Guanowsky—as Plaintiff. Accordingly, a reasonable jury could find that these employees were similarly situated to Plaintiff and in turn it remains a question of fact whether Plaintiff can also establish religious discrimination under a disparate treatment theory.

## IV.   Conclusion

Based on the aforesaid both Plaintiff and Defendant's motions for summary judgment will be **DENIED**. An appropriate order follows.


**MALACHY E. MANNION**
**United States District Judge**

**DATE: May 2, 2024**
23-688-02

- 22 -